STATE OF NORTH CAROLINA v. JOHN BLAINE O'HANLAN

No. COA01-1227

(Filed 5 November 2002)

### 1. Indictment and Information— short-form indictment— rape, sexual offense

Short form indictments for first-degree rape and first-degree sexual offense, and first-degree kidnapping are constitutional.

### 2. Evidence— sexual assault—emergency room physician's testimony—victim's emotional state

There was no plain error in a prosecution for first-degree rape, first-degree sexual offense, and first-degree kidnapping in the admission of an emergency room physician's opinion testimony that the victim's emotional state was consistent with sexual assault and that a sexual assault had actually occurred because the challenged testimony summarized the pattern of injuries and constituted a medical conclusion which the witness was qualified to render.

### 3. Evidence— sexual assault—emergency room physician's testimony—credibility of victim

An emergency room physician's opinion testimony that the victim's emotional state was consistent with someone who had been sexually assaulted and that a sexual assault had occurred did not improperly bolster the credibility of the victim so as to constitute plain error in a rape and sexual offense prosecution. The treating physician is permitted to give the background reasons for his diagnosis and he was never asked whether he believed the victim was sincere.

### 4. Evidence— sexual assault—emergency room physician's opinion

There was no plain error in a prosecution for first-degree rape, first-degree sexual offense, and first-degree kidnapping where an emergency room physician who had assumed care after a shift change testified that the victim had been sexually assaulted where the doctor's opinion was based on her expertise in treating sexually abused patients, the victim's emotional state in the emergency room, the victim's physical appearance, and what the victim had said during the course of treatment.

**5. Evidence— kidnapping and rape—emergency room doctor's characterization**

There was no plain error where an emergency room doctor testified that a patient was kidnapped and raped. Even though the testimony was improper because the legal meanings of "rape" and "kidnapping" are outside the doctor's area of expertise, the trial court gave a limiting instruction and there was overwhelming evidence of defendant's guilt.

**6. Evidence— rape victim—defendant's arrest—emergency room reassurances of safety**

There was no prejudicial error in a prosecution for first-degree rape, first-degree sexual offense, and first-degree kidnapping in the admission of testimony that an emergency room doctor had told the victim that she was safe, and that "this person" was behind bars. The doctor did not identify defendant as being in custody, made a generalized statement to reassure the victim as a part of her treatment, and there was other testimony, admitted without objection, that a detective told the victim that defendant was in jail.

**7. Evidence— sexual assault—importance of psychiatric history**

There was no error in a prosecution for first-degree rape, first-degree sexual offense, and first-degree kidnapping in the admission of an emergency room doctor's testimony that a victim's psychiatric history is important to her recovery. The testimony was general and helpful to the jury in that it showed the type of information upon which the doctor relied in forming her opinions.

**8. Evidence— sexual assault and kidnapping—victim's PTSD diagnosis—opening door**

Although it was error to admit a sexual assault and kidnapping victim's Post Traumatic Stress Disorder diagnosis substantively without a limiting instruction, defendant opened the door by raising the inference that the victim was unstable prior to the assault.

**9. Evidence— extent of investigation—cross-examination— identification of defendant by victim**

There was no error in a prosecution for first-degree rape, first-degree sexual offense, and first-degree kidnapping in the admission of cross-examination testimony from a detec-

STATE v. O'HANLAN

[153 N.C. App. 546 (2002)]

tive that he had not done more scientific testing of evidence because the victim had survived the attack and identified her attacker.

**10. Rape— first-degree—instructions—serious injury**

There was no plain error in a first-degree rape prosecution where the judge instructed the jury that a conviction required a finding of "personal injury" rather than "serious personal injury." In context, the error had no probable impact because there was specific testimony about the victim's injuries and the court included serious injury in its instructions on the elements of first-degree rape.

**11. Constitutional Law— effective assistance of counsel—failure to object**

A sexual assault and kidnapping defendant did not suffer ineffective assistance of counsel from his counsel's failure to object at certain points during the trial, given the overwhelming evidence of defendant's guilt.

Appeal by defendant from judgment entered 11 April 2000 by Judge Zoro J. Guice, Jr., in Swain County Superior Court. Heard in the Court of Appeals 12 June 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*David G. Belser for defendant appellant.*

McCULLOUGH, Judge.

The Swain County Grand Jury indicted defendant John Blaine O'Hanlan on 7 February 2000 for first-degree kidnapping, two counts of first-degree rape, three counts of first-degree sexual offense, assault with a deadly weapon inflicting serious injury, and felonious larceny. Defendant was tried on these charges at the 3 April 2000 Criminal Session of Swain County Superior Court before a jury and the Honorable Zoro J. Guice, Jr. The jury found defendant guilty of all charges. Defendant was sentenced to a minimum of 288 months and a maximum of 355 months for each first-degree sex offense charge, a minimum of 29 months and a maximum of 44 months for the consolidated assault and larceny charges, a minimum of 100 months and a maximum of 129 months for the first-degree kidnapping conviction, and a minimum of 288 months and a maximum of 355 months in

prison for each of the first-degree rape convictions, all sentences to run consecutively. Defendant appeals.

At trial, the State presented evidence as follows: The victim lived and worked as a waitress at the Nantahala Outdoor Center in 1999, in the Mashburn's Housing Complex, which is comprised of five cabins in a wooded area near Wesser Creek. Each cabin is divided into three or four private rooms.

Defendant, who went by the name of "Jack" or "Jack O," worked as a cook at River's End Restaurant at the Nantahala Outdoor Center. He lived in the same cabin as the victim in an adjacent room.

The victim had planned to leave the Center on 5 November 1999 to return to Asheville and had told several people of her plans to do so. Around 11:00 a.m. on that day, the victim had her belongings on the cabin porch ready to be loaded into her Jeep. She asked defendant to watch her belongings while she was gone, and defendant agreed to do so. When she returned, defendant insisted on helping her load her belongings into her Jeep. After loading the Jeep, the victim returned to the cabin to do some final cleaning. As she carried out the trash and recycling, she felt a hard blow to the head from behind. She turned around and saw defendant holding a sock full of rocks. She asked defendant what he was doing, to which he responded by telling her to shut up and hitting her on the head with the sock again. Defendant pushed her to the ground, got on top of her, and began choking her. After struggling with the victim, defendant tied her hands and legs together with duct tape and shoved her into her Jeep. According to the victim, defendant informed her that he would kill her and anyone who came to her aid if she screamed.

Defendant drove the victim's Jeep into the middle of the woods and stopped. Defendant untaped her, took off her jeans, and then kissed her face and rubbed her body. Defendant performed oral sex on her, becoming angry when she did not have an orgasm. Defendant then got on top of her and penetrated her vagina with his penis. He finally stopped and went to the Jeep, where he retrieved the victim's toothbrush and inserted it into her rectum.

Later, defendant moved the Jeep into another location. Defendant penetrated her vagina again with his penis but had troubling maintaining an erection. He became more angry and brutal. At one point, defendant paused, retrieved some bath gel, and anally raped her.

When defendant finished, he taped her arms and legs again, put a gag in her mouth, covered her eyes with duct tape, and put her in the backseat with her belongings. Defendant left her there and told her not to escape. However, the victim did manage to escape while defendant was gone and ran down a nearby trail through the woods. She eventually reached the home of the Evans family at about 8:45 a.m. on 6 November 1999.

Chief Deputy Jackie Fortner of the Swain County Sheriff's Department was summoned to the Evans' home. The victim told Fortner that "Jack O" had kidnapped and raped her. She was then transported by ambulance to the Swain County Emergency Room.

Deputy Fortner arrested defendant at his place of work on the morning of 6 November 1999. At the time of his arrest, defendant had multiple cuts and scrapes on his arms and hands, his knuckles were red and dirty, his knees were skinned, and he had a scratch on his left shoulder. Deputy Fortner recovered the victim's watch which she had lost during the assault and a piece of duct tape from the person of defendant. Deputy Fortner also recovered various items of physical evidence, such as the Jeep and the items inside of it.

Defendant assigns forty-six errors on appeal. He mentions only thirteen assignments of error in his brief. The assignments of error not mentioned in his brief are deemed abandoned according to N.C.R. App. P. 28(b)(5) (2002). Defendant's remaining 13 assignments of error are grouped into four main arguments in his brief.

Defendant argues on appeal that (I) the short form indictments for first-degree rape and first-degree sexual offense failed to allege the elements of each offense sufficiently to charge defendant with these crimes and should be held unconstitutional; (II) the trial court committed reversible error when it admitted for substantive purposes the testimony of Dr. Patrick Hanaway, Dr. Lisa Lichtig and Detective Jack Fortner that the victim had been sexually assaulted, kidnapped, and raped; (III) the trial court committed plain error when it instructed the jury that the State need only establish "personal injury" for a first-degree rape conviction; and (IV) defendant's convictions should be vacated as a result of the ineffective assistance of trial counsel. For the reasons set forth we find no error.

I.

[1] In his first assignment of error, defendant argues that the trial court erred in allowing the short form indictments for first-degree

rape and first-degree sexual offense as they failed to allege the elements of each offense sufficiently to charge defendant with these crimes and contends the short form indictments should be held unconstitutional. Defendant recognizes that the North Carolina Supreme Court has upheld the short form as constitutional. *See State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Defendant urges this Court to reconsider such holdings. Our Court has previously addressed this matter as it pertained to N.C. Gen. Stat. § 15-144.1 (2001) for rape and N.C. Gen. Stat. § 15-144.2 (2001) for sexual offense and upheld the short form. *See State v. Harris*, 140 N.C. App. 208, 215-16, 535 S.E.2d 614, 619, *appeal dismissed, disc. review denied*, 353 N.C. 271, 546 S.E.2d 122 (2000). We find nothing in our previous cases or in defendant's argument that persuades us the short form indictments for rape or sexual offense are invalid or unconstitutional. Accordingly, defendant's assignment of error is overruled.

## II.

In his second assignment of error, defendant argues that the trial court committed reversible error when it admitted the testimony of Dr. Patrick Hanaway, Dr. Lisa Lichtig, and Detective Jack Fortner that the victim had been sexually assaulted, kidnapped, and raped. We disagree.

The rule governing testimony by experts is N.C. Gen. Stat. § 8C-1, Rule 702 (2001). Rule 702 states that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." *Id.* "The subject matter of the expert testimony must merely be such that it would be helpful to the fact finder." *State v. Crawford*, 329 N.C. 466, 477, 406 S.E.2d 579, 585 (1991). Under N.C. Gen. Stat. § 8C-1, Rule 704, "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C. Gen. Stat. § 8C-1, Rule 704 (2001). Expert testimony is not allowed, however, regarding a " ' "legal conclusion . . . at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness." ' " *Crawford*, 329 N.C. at 477, 406 S.E.2d at 585 (quoting *State v. Rose*, 323 N.C. 455, 459, 373 S.E.2d 426, 429 (1988) (quoting *State v. Smith*, 315 N.C. 76, 100, 337 S.E.2d 833, 849 (1985))).

### Dr. Hanaway

Dr. Patrick Hanaway testified as an expert for the State. He is a board-certified family physician. He received his medical degree in 1987 and has worked in emergency rooms since 1988. He has been involved in 32 sexual assault examinations. Dr. Hanaway was qualified without objection as an expert in emergency medicine with a speciality dealing with rape victims.

Dr. Hanaway treated the victim in the emergency room and observed her physical condition. According to Dr. Hanaway, she described the assault in detail to him. Dr. Hanaway testified at trial that she seemed visibly shaken and scared. He also performed a rape kit examination. Dr. Hanaway found that she had multiple abrasions, bruises and scratches all over her body. Her back was bruised and scraped, her elbows rubbed raw, and her nipples bruised. Several of her front teeth were broken. Using a florescent light to examine the victim's genitals, Dr. Hanaway observed the lighting up of sperm across the victim's vaginal area.

In addition to her physical condition, Dr. Hanaway noted the victim's mental state. He described her demeanor as "visibly shaken," "scared," "stunned," "clearly afraid" and "spontaneously breaking down in tears at times."

At trial, Dr. Hanaway testified as follows:

Q. Tell the jury the things that you explained and the dialogue back and forth between you and [the victim]?

. . . .

. . . She didn't seem to be able to receive the information that I was giving her. *It seemed that her emotional state was consistent with having been assaulted in some manner, and then it's my job to determine what the extent of that assault is.*

(Emphasis added.)

Further, the doctor stated:

[Dr. Hanaway]: I've indicated to you that I've been involved in more than thirty of these cases. I've definitely been involved in cases where it was my firm opinion at the end of the history and physical that there had not been a sexual assault that had occurred, because the pieces did not fit together.

STATE v. O'HANLAN

[153 N.C. App. 546 (2002)]

*In this case it seemed pretty clear that there had been some
type of assault that had occurred from the history and from—*

[Defense Counsel]:  Objection, Your Honor.

[Court]:  Overruled.

[Prosecutor]:  You may continue?

[Dr. Hanaway]:  *. . . from the history and the physical obser-
vation that I had made to that point in time. So, I felt clear that
there was some assault that had happened.* I was not yet clear,
based on the gathering of evidence, of whether any sexual assault
had occurred, though *her emotional state was consistent with a
very severe and significant assault which happened.*

(Emphasis added.)

Later, Dr. Hanaway testified that he had ordered an HIV test to be
done "so that it could be followed up in three to six months time to
determine if [the victim] was exposed to HIV through that sexual
encounter, sexual assault." Finally, Dr. Hanaway testified this case
was the most "intense and gruesome" of the more than thirty alleged
sexual assault cases he had seen.

As the transcript excerpt reveals, defendant only objected once
to the testimony he now assigns as error. "[W]hen . . . evidence is
admitted over objection, and the same evidence has been previously
admitted or is later admitted without objection, the benefit of the
objection is lost." *State v. Maccia,* 311 N.C. 222, 229, 316 S.E.2d 241,
245 (1984). Thus, defendant's contentions are reviewable only for
plain error. Under this standard, defendant is entitled to relief if he
can show " '(i) that a different result probably would have been
reached but for the error or (ii) that the error was so fundamental as
to result in a miscarriage of justice or denial of a fair trial.' " *State v.
Stanfield,* 134 N.C. App. 685, 689, 518 S.E.2d 541, 544 (1999) (quoting
*State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)).

[2] Defendant first contends the trial court erred in admitting por-
tions of Dr. Hanaway's testimony because he expressed his opinion
that the victim's emotional state was consistent with sexual assault,
and further that a sexual assault actually occurred.

In the present case, Dr. Hanaway was tendered and accepted as
an expert in emergency medicine with a speciality dealing with rape
victims. A qualified expert may testify, like any other witness, to his

or her own observations. *State v. Wade*, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979). The challenged testimony summarized the pattern of injuries and constituted a medical conclusion which the witness was fully qualified to render. In a similar case the Supreme Court has held that:

> [The expert] used the term "sexual assault, attack" merely to describe the pattern of injuries. Again, and to the extent that [the expert] stated a legal conclusion, "sexual assault or attack" is not a legal term of art which carries a specific meaning not readily apparent to the witness. Like "torture," "sexual assault" does not carry a precise legal definition involving elements of intent as well as acts, nor does it have a legal meaning that varies from the common understanding of the term.

*State v. Jennings*, 333 N.C. 579, 601, 430 S.E.2d 188, 198, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). It is clear from the record and transcript that there existed ample foundation for Dr. Hanaway's expertise and his characterization of what happened to the victim as a sexual assault. In the present case there was physical evidence to support a diagnosis that the victim had been sexually assaulted. Dr. Hanaway, who was qualified as an expert, examined her and noted substantial visible physical injuries consistent with assault. He testified to her injuries as listed above. Specifically as to sexual assault, Dr. Hanaway testified that when he used the florescent light there was "lighting up of presumably sperm across [the victim]'s vaginal area." Dr. Hanaway's testimony concerning this issue was in accordance with N.C.R. Evid. 702 and does not constitute plain error.

**[3]** Secondly, defendant contends that Dr. Hanaway's testimony impermissibly bolstered the credibility of the victim.

In *State v. Marine*, 135 N.C. App. 279, 520 S.E.2d 65 (1999), this Court stated:

> Rule 608(a) of the North Carolina Rules of Evidence permits the use of reputation or opinion testimony in order to bolster another witness' credibility, so long as it is done in accordance with Rule 405(a). Rule 405(a) then explicitly prohibits expert testimony regarding a witness' character. When read together, the Rules of Evidence thus prohibit an expert witness from commenting on the credibility of another witness. *State v. Wise*, 326 N.C. 421, 426, 390 S.E.2d 142, 145, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990).

STATE v. O'HANLAN

[153 N.C. App. 546 (2002)]

On the other side of the coin, however, Rule 702 permits expert witnesses to explain the bases of their opinions. Thus, "a witness who renders an expert opinion may also testify as to the reliability of the information upon which he based his opinion." *State v. Jones,* 339 N.C. 114, 146, 451 S.E.2d 826, 842, (1994), *cert. denied,* 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). Furthermore, the mental and emotional state of the victim before, during, and after a rape or sexual assault is relevant testimony that can help assist the trier of fact in understanding the basis of that expert's opinion. *State v. Kennedy,* 320 N.C. 20, 30-31, 357 S.E.2d 359, 366 (1987).

*Id.* at 281, 520 S.E.2d at 66-67.

As *Marine* noted, the cases dealing with the line between discussing one's expert opinion and improperly commenting on a witness' credibility have made it a thin one. *See State v. Jenkins,* 83 N.C. App. 616, 623-25, 351 S.E.2d 299, 303-04 (1986), *cert. denied,* 319 N.C. 675, 356 S.E.2d 791 (1987); *State v. Heath,* 316 N.C. 337, 339-44, 341 S.E.2d 565, 567-69 (1986); *State v. Wise,* 326 N.C. at 425-28, 390 S.E.2d at 145-47 (1990); and *State v. Bright,* 131 N.C. App. 57, 60-61, 505 S.E.2d 317, 319-20, *disc. review allowed, cert. allowed,* 349 N.C. 366, 525 S.E.2d 179 (1998), *disc. review dismissed as improvidently allowed,* 350 N.C. 82, 511 S.E.2d 639 (1999). However, in the case *sub judice,* Dr. Hanaway's testimony did not improperly bolster the believability of the victim. His testimony, as set forth above, was that the victim's emotional state was consistent with someone who had been sexually assaulted; indeed, a severe sexual assault. We note that the doctor was never asked whether he believed the victim was sincere. Dr. Hanaway explained how he concluded that she had been sexually assaulted through the physical evidence, the victim's statements, and her emotional condition. While his testimony may in some way have bolstered the victim's claim that she had been sexually assaulted, this is incidental to the doctor's testimony. He was the treating physician when she came to the hospital and is permitted to give the background reasons and basis for his diagnosis. Thus, defendant's assignment of error, as it pertains to Dr. Hanaway, is overruled.

### Dr. Lichtig

[4] Dr. Lisa Lichtig also testified as an expert for the State. Dr. Lichtig has been a physician for ten years and is a board-certified family physician. She has extensive prior experience in treating sexual

assault victims. Dr. Lichtig was tendered and admitted as an expert in the fields of family practice, emergency room practice, and the treatment of sexually abused patients.

She saw and treated the victim in this case in the emergency room, as she took over for Dr. Hanaway when his shift ended. In the emergency room, Dr. Lichtig observed the victim's emotional and physical state. She testified that the victim was "quite frightened" and "crying intermittently." Dr. Lichtig also noted that the victim had bruising and abrasions all over her body. The bruising was so severe according to the doctor, she ordered a CAT scan to rule out the possibility of a skull fracture.

At trial, Dr. Lichtig testified as follows:

Q. . . . did you have an opportunity to form an opinion as to whether or not all of those findings, psychological, physical, medical, whether or not all of those findings *were consistent with a woman who had been sexually assaulted, that is raped, based on your experience?*

A. Yes.

Q. What was your opinion?

[Defense Counsel]: Objection, Your Honor.

[Court]: Overruled.

A. *My opinion is that [the victim] was sexually assaulted, she was kidnapped, she was sexually raped* and abused on multiple occasions in an eighteen hour period of time. . . . *[I]t was the worst sexual assault case that I had ever been involved with in my career.*

Q. In your ten-year career?

A. Yes, *it was the worst one I had ever seen.*

(Emphasis added.)

The trial court then gave the jury the following limiting instruction:

[Court]: Members of the jury, the Court has allowed this witness to express opinions in the field of family medicine, emergency room practice and the treatment of sexually abused patients. You ladies and gentlemen are the fact finders in this

case. The credibility and the weight of this evidence is a matter for you the jury to determine and to decide.

As was the case with the testimony of Dr. Hanaway, defendant has lost the benefit of his objection by allowing the evidence to be introduced without objection. Therefore, we address his arguments here, as above, under the plain error standard. *See State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984).

Defendant contends that the trial court erred in admitting Dr. Lichtig's expert opinion that the victim had been sexually assaulted, kidnapped, and raped as it impermissibly goes beyond the scope of expert opinion.

We have already held with the testimony of Dr. Hanaway that a conclusion of sexual abuse is permitted if concluded upon proper foundation. Likewise, Dr. Lichtig's opinion regarding sexual assault was based on her expertise in treating sexually abused patients, the victim's emotional state in the emergency room, her physical appearance and from what the victim had told her during the course of treatment. This is a proper foundation for her expert opinion that the victim was sexually assaulted in accordance with N.C.R. Evid. 702.

**[5]** However, Dr. Lichtig's opinion that the victim was kidnapped and raped was improper. "An expert may not testify regarding whether a legal standard or conclusion has been met 'at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness.' " *State v. Parker*, 354 N.C. 268, 289, 553 S.E.2d 885, 900 (2001), *cert. denied*, —— U.S. ——, 153 L. Ed. 2d 162 (2002) (quoting *State v. Ledford*, 315 N.C. 599, 617, 340 S.E.2d 309, 321 (1986); *State v. Smith*, 315 N.C. 76, 100, 337 S.E.2d 833, 849 (1985)). " 'Rape' is a legal term of art . . . ." *State v. Najewicz*, 112 N.C. App. 280, 293, 436 S.E.2d 132, 140 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994); *see also State v. Galloway*, 304 N.C. 485, 489, 284 S.E.2d 509, 512 (1981) ("Clearly, a medical expert may not testify that the defendant raped the prosecuting witness."); *Smith*, 315 N.C. at 100, 337 S.E.2d at 849 (The medical witness could testify that injuries were caused by a male sex organ, an ultimate issue, noting that witness "did not testify that [victim] had been raped, nor that the defendant raped her.").

Like the term "rape," the term "kidnap" has its own meaning in the eyes of the law that is not readily apparent to the witness. Thus,

it was also improper for Dr. Lichtig to render such an opinion, especially since it is clearly outside of her expertise.

It is clear that the jury is solely responsible for determining if one was kidnapped or raped. Dr. Lichtig's testimony goes beyond the scope of her permissible expert opinion as she was in no better position than the jury in concluding those facts.

Nevertheless, we do not believe that the error rises to the level of plain error. There was overwhelming evidence of defendant's guilt; and following the testimony, the trial court gave a limiting instruction reminding the jurors that Dr. Lichtig's opinion is limited in certain areas and that they are the fact-finder. Any error in the admission of this testimony is harmless and does not rise to the level of plain error.

Briefly, defendant also contends, as he did in reference to Dr. Hanaway's testimony, that Dr. Lichtig's testimony above improperly bolstered the victim's credibility. We find that this situation is indistinguishable from Dr. Hanaway's, and refer to the above discussion.

[6] Defendant next contends that the trial court erred when it admitted Dr. Lichtig's testimony that she told the victim at the hospital

A. That she was safe, that this person was behind bars right now—

[Defense counsel]: Objection, Your Honor.

[Court]: Overruled.

A. That they had him in custody, and that she was going to get better from this.

Defendant argues this implies not only that the victim had in fact been assaulted, but that defendant was guilty of the assault constituting prejudicial error. We disagree.

The State points out that Dr. Lichtig did not identify defendant as being the person who was in custody as she referred only to "this person" and "him." Dr. Lichtig was concerned about the victim's emotional well-being and was attempting to reassure her that she was safe. It was a generalized statement made as a part of the victim's treatment. The doctor had a very emotional patient she believed may have been suicidal. Dr. Lichtig said that she was trying to "plant the seeds of hope" in the victim that she could begin to recover. Furthermore, there was also other evidence of defendant being

behind bars, as the jury heard without objection the testimony of Detective Fortner that he arrested defendant and told the victim that defendant was in jail. Thus, this evidence is cumulative, and its admission could not have prejudiced defendant. *See State v. Taylor*, 344 N.C. 31, 47, 473 S.E.2d 596, 605 (1996).

**[7]** Defendant next contends that the trial court erroneously admitted Dr. Lichtig's testimony that the victim's psychiatric history was relevant because "when people recover from traumatic events in their life, it's important to know what other kinds of things they have been through." We disagree. The testimony complained of is as follows:

> Q. Any of this stuff the defense has brought up about the fact of anything about her past when she was a baby, does any of that have any impact whatsoever on the opinion that you gave this jury that this woman was raped?

> A. Absolutely not, it's totally irrelevant. The only relevance it has—

> > [Defense Counsel]: Objection, Your Honor.

> > [Court]: Overruled.

> A. . . . in my opinion is in terms of her recovery. When people recover from traumatic events in their life it's important to know what other kinds of things they have been through so we can offer our compassion, we can offer medications when appropriate, we can offer them the kind of guidance they need in going on to live a normal healthy life . . . .

Defendant has not shown this testimony, which was general in nature, to be prejudicial. This testimony was relevant in showing the type of information Dr. Lichtig relies upon in forming her opinions and was helpful to the jury in determining how much weight to give her testimony. This testimony was within the scope of permissible expert opinion under N.C.R. Evid. 702 and was not prejudicial in any way. N.C. Gen. Stat. § 8C-1, Rule 702 (2001).

**[8]** Finally, defendant contends that the trial court erred in allowing Dr. Lichtig's testimony concerning the contents of a psychiatric evaluation of the victim after the alleged rape, which included a diagnosis of post-traumatic stress disorder (PTSD) as a result of severe trauma from kidnapping and rape by a co-worker at the Nantahala Outdoor Center. Defendant argues that no limiting instruction was given as required by *State v. Hall*, 330 N.C. 808, 412 S.E.2d 833 (1992),

and the testimony was admitted for substantive purposes which was also error. We disagree.

> Evidence from an expert that a prosecuting witness is suffering from PTSD is admissible, for corroborative purposes to assist the jury in understanding the behavioral patterns of sexual assault victims. The expert witness may not, however, explicitly or implicitly indicate the PTSD was caused or contributed to by the actions of the defendant that are the subject of the trial. On this factual question, whether a defendant actually committed the act with which he is charged, the expert is "in no better position to have an opinion than the jury."

*State v. Chavis*, 141 N.C. App. 553, 565-66, 540 S.E.2d 404, 413-14 (2000) (citations omitted). "If admitted, the trial judge should take pains to explain to the jurors the limited uses for which the evidence is admitted. In no case may the evidence be admitted substantively for the sole purpose of proving that a rape or sexual abuse has in fact occurred." *Hall*, 330 N.C. at 822, 412 S.E.2d at 891.

In the present case, Dr. Lichtig testified that the victim suffered from PTSD as a result of the events that took place in November of 1999 while on redirect examination by the State. No limiting instruction followed. Thus, defendant contends that this was admitted for the sole purpose that the rape took place.

The State argues that defendant opened the door to the PTSD testimony. While cross-examining Dr. Lichtig, defendant asked questions pertaining to the victim's mental treatment, in particular, a psychiatric evaluation of the victim. This line of questioning elicited responses that could have given the jury the impression that the victim was mentally unstable prior to the time of the assault. On redirect examination, the State introduced the rest of the report to put the evidence introduced by defendant into context, namely that the victim only began suffering such mental problems after that attack. It was here that evidence of PTSD was admitted.

Presumably, an instruction by the trial court in accordance with *Hall* and *Chavis* would have been required. However, this testimony is not violative of the *Hall/Chavis* principle. The reference to PTSD was being used to rebut the inference by defendant that the victim was mentally unstable prior to the assault and rape rather than to prove the assault and rape happened. Therefore, the evidence was admissible, but not as substantive evidence. Defendant would have

been entitled to request the *Hall/Chavis* limiting instruction. However, since he did not, "[t]he admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions." *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988).

In addition, evidence which is otherwise inadmissible is admissible to explain or rebut evidence introduced by defendant. *State v. Garner*, 330 N.C. 273, 290, 410 S.E.2d 861, 870 (1991); *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). This is true even if a defendant admits evidence during cross-examination of a State's witness, prompting the State to introduce otherwise inadmissible evidence in rebuttal. *State v. McKinnon*, 328 N.C. 668, 673, 403 S.E.2d 474, 477 (1991). Therefore, where a defendant examines a witness so as to raise an inference favorable to defendant, which is contrary to the facts, defendant opens the door to the introduction of the State's rebuttal or explanatory evidence about the matter. *State v. Bullard*, 312 N.C. 129, 157-58, 322 S.E.2d 370, 386 (1984).

Although it was error to admit evidence of PTSD substantively (or to not give the limiting instruction), defendant nonetheless opened the door to such evidence being admitted. Defendant's assignment of error as to Dr. Lichtig is overruled.

### Detective Fortner

[9] Defendant contends Chief Deputy Fortner gave improper opinion testimony which was tantamount to expert testimony. As with the previous two witnesses, defendant argues that the trial court erred in permitting him to bolster the credibility of the complaining witness, and to testify essentially that she had in fact been assaulted, raped, and kidnapped.

Defendant heavily cross-examined Deputy Fortner as to his investigation and why certain procedures were done and not done. Specifically, defendant was asking the deputy why more items were not sent off for scientific testing. The challenged testimony at trial is as follows:

Q. You know what evidence—what it means to have evidence that shows innocence of the accused, don't you?

A. Yes sir.

Q. Did you find any?

STATE v. O'HANLAN

[153 N.C. App. 546 (2002)]

A. Any evidence of—

Q. Or were you looking for any?

A. I didn't need much evidence, sir, because I have a victim that had told me who her attacker was and from the look that her physical person was and the way she described the attack and her bruising and her scars, she told me who the attacker was and she gave me a name and a description. That's what I needed because I was fortunate I had an eye witness [sic] victim that survived.

The State, on redirect examination touched on the earlier testimony:

Q. There was a lot of questions here from counsel for the defendant about the fact that you didn't send this off, you didn't send that off, you didn't do this or that check. What can you tell this jury about why you didn't have these things checked?

A. I had a victim that survived her attack. She could positively identify her assailant, the person that kidnapped, raped, and brutally beat her. If she had died—

[Defense Counsel]: Objection, Your Honor, speculative.

[Court]: Overruled.

Q. Go ahead?

A. . . . I would have done more fingerprinting, more checking under fingernails, more fiber transfer, because I wouldn't have known who done it. But she positively told me who done it and I arrested him.

Defendant notes that Deputy Fortner was not tendered as an expert at trial. However, defendant contends that he is a professional law enforcement officer who had extensive experience investigating crimes over a lengthy career, and that his testimony was tantamount to expert testimony.

The context in which this testimony was given makes it clear Fortner was not offering his opinion that the victim had been assaulted, kidnapped, and raped by defendant, but was explaining why he did not pursue as much scientific testing of physical evidence in this case as he would a murder case because the victim in this case survived and was able to identify her assailant. His testimony was rationally based on his perception and experience as a detective investigating an assault, kidnapping, and rape. His testimony was

helpful to the fact-finder in presenting a clear understanding of his investigative process. Further, defendant brought out this testimony by attacking the investigation on cross-examination. His testimony was in accordance with the rule for lay opinion testimony. N.C. Gen. Stat. § 8C-1, Rule 701 (2001). Defendant's assignment of error as it pertains to Chief Deputy Fortner is overruled.

After examining defendant's assignments of error as they pertain to the above witnesses' testimony, if there was any error, it does not rise to the level of plain error.

## III.

[10] In his next assignment of error, defendant contends that the trial court committed plain error when it instructed the jury that the State need only establish "personal injury" for a first-degree rape conviction. Defendant admits the trial court initially instructed the jury that the State had to prove defendant inflicted serious personal injury upon the victim to prove first-degree rape; however, defendant contends the trial court erred when the instructions followed with a mandate that required the jury to convict defendant of first-degree rape upon a finding of "personal injury," rather than "serious personal injury" as required by N.C. Gen. Stat. § 14-27.2(a) (2001). We disagree.

N.C. Gen. Stat. § 14-27.2(a)(2)(b) provides that a person is guilty of first-degree rape if the person engages in vaginal intercourse with another person and inflicts "serious personal injury upon the victim or another person[.]" *Id.* Defendant did not object to this aspect of the jury instructions at trial. Accordingly, the challenged instruction is reviewable only for plain error. N.C.R. App. P. 10(b)(2); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79. In the present case, a review of the whole record reveals no plain error as the instructional error had no probable impact on the jury's finding of guilt.

The State presented the victim who testified that defendant raped, kidnapped, and assaulted her. This testimony was corroborated by witnesses who treated the victim's injuries. The victim's injuries included extensive bruises, abrasions all over her body, broken teeth, burst blood vessels in her eye, a shoulder injury, and psychological effects. These injuries satisfy the definition of serious

personal injury. *See, e.g., State v. Jean,* 310 N.C. 157, 170, 311 S.E.2d 266, 273 (1984); *State v. Herring,* 322 N.C. 733, 738-39, 370 S.E.2d 363, 367-68 (1988); *State v. Ackerman,* 144 N.C. App. 452, 459-61, 551 S.E.2d 139, 144-45, *cert. denied,* 354 N.C. 221, 554 S.E.2d 344 (2001).

In addition, the trial court correctly listed for the jury all of the elements of first-degree rape in accordance with the language in the Pattern Jury Instructions. N.C.P.I. Crim. 207.10 (2002). This included telling the jury that they must find that the State proved beyond a reasonable doubt that "the defendant inflicted serious personal injury upon the victim." After listing the elements in detail, the trial court summarized what the State must prove and the trial court used the phrase "personal injury" instead of "serious personal injury." The trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct. *State v. Boykin,* 310 N.C. 118, 124, 310 S.E.2d 315, 319 (1984). " 'Where the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous affords no grounds for reversal.' " *Id.* at 125, 310 S.E.2d at 319 (quoting *State v. Jones,* 294 N.C. 642, 653, 243 S.E.2d 118, 125 (1978)).

Applying the foregoing principles to the instant case, we hold that, although "serious personal injury" was omitted once, when the entire jury charge is viewed contextually, it reveals no plain error as the instructional error had no impact on the jury's finding of guilt. Defendant's assignment of error is overruled.

## IV.

[11] In his final assignment of error, defendant contends that his convictions should be vacated as a result of the ineffective assistance of trial counsel. Defendant argues that his trial counsel failed on numerous occasions to object to repeated opinion testimony from Dr. Hanaway, Dr. Lichtig, and Chief Detective Fortner. In addition, defendant asserts that his trial counsel performed unreasonably when he failed to object to the trial court's mandate to the jury that it find first-degree rape upon proof of "personal injury," instead of "serious personal injury." Defendant argues that but for these errors, defendant would have obtained a different result at trial.

In order to establish ineffective assistance of counsel, a defendant must establish (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the defend-

ant was prejudiced by his attorney's performance to the extent there exists a reasonable probability that the result of the trial would have been different absent the error.

*State v. Skipper,* 146 N.C. App. 532, 537-38, 553 S.E.2d 690, 694 (2001); *State v. Jaynes,* 353 N.C. 534, 547-48, 549 S.E.2d 179, 191 (2001), *cert. denied,* —— U.S. ——, 152 L. Ed. 2d 220 (2002); *see Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674 (1984). Defendant has not satisfied either prong of this test.

In the present case, defendant has failed to prove the attorney's performance fell below the objective standard of reasonableness or to show that his error was such that the result of defendant's trial would have been different. In light of the overwhelming evidence of defendant's guilt, the failure to object in certain instances would not make it more probable that the outcome of trial would have been different as the testimony complained of was at most harmless error and the jury instructions as a whole were correct. Defendant's assignment of error is overruled.

Because we find that defendant had a fair trial free from prejudicial error, we find

No error.

Judges McGEE and BRYANT concur.