NO. COA14-490
 NORTH CAROLINA COURT OF APPEALS
 Filed: 16 December 2014

STATE OF NORTH CAROLINA

 New Hanover County
 v.
 Nos. 10 CRS 61706, 62183

BO ANDERSON TAYLOR

 Appeal by defendant from judgments entered 16 September

2011 by Judge Charles H. Henry in New Hanover County Superior

Court. Heard in the Court of Appeals 8 October 2014.

 Attorney General Roy Cooper, by Associate Attorney General
 Melody Hairston, for the State.

 Appellate Defender Staples Hughes, by Assistant Appellate
 Defender Nicholas C. Woomer-Deters, for Defendant.

 ERVIN, Judge.

 Defendant Bo Anderson Taylor appeals from judgments entered

based upon his convictions for misdemeanor larceny, felonious

breaking or entering a trailer, and five counts of obtaining

property by false pretenses. On appeal, Defendant contends that

the trial court erred by allowing the admission of evidence

affirming the truthfulness of the alleged victim and by allowing

the State to elicit extensive testimony that Defendant had

exercised his right to remain silent as part of its case in
 -2-
chief. After careful consideration of Defendant’s challenges to

the trial court’s judgments in light of the record and the

applicable law, we conclude that Defendant is entitled to a new

trial.

 I. Factual Background

 A. Substantive Facts

 1. State’s Evidence

 In October 2010, Defendant and his girlfriend, Gail

Lacroix, were living with Defendant’s sister, Crystal Medina.

In view of the fact that Ms. Lacroix was Defendant and Ms.

Medina’s step-mother, no one in the family was happy about the

relationship between Defendant and Ms. Lacroix.

 Because she did not have any room in her house to

accommodate Defendant and Ms. Lacroix, Ms. Medina allowed them

to stay in a shop located in her backyard. At the time that

Defendant and Ms. Lacroix moved in, the Medinas were planning to

separate and Ms. Medina’s husband was in jail.

 The Medinas had formerly owned and operated a residential

and commercial concrete business and had purchased several tools

for use in the business, including two lasers that had been

purchased for $1,495 each. The tools in question were stored in

locked trailers located in Ms. Medina’s backyard. Defendant had

access to the keys to these trailers. As part of the divorce
 -3-
settlement, Ms. Medina planned to let her husband keep the tools

while she would keep the house. In view of the fact that she

“didn’t trust [her husband’s] family,” Ms. Medina had

photographed all of the tools and recorded their serial numbers.

 On 2 October 2010, Defendant pawned a hammer drill at

Picasso Pawn for $50. On 4 October 2010, Defendant pawned two

generators at Pawn USA for $300. Defendant returned to Picasso

Pawn on 13 October 2010 and pawned an air compressor for $35.

On 6 November 2010, Defendant pawned two lasers at National Pawn

for $200. On each of these occasions, Defendant signed a

statement indicating that he owned the items that were being

pawned.

 In November 2010, Ms. Medina found a pawnshop ticket on the

floor of her truck indicating that Defendant had pawned the

lasers. Upon making this discovery, Ms. Medina called Defendant

to ask about the ticket. However, Defendant hung up on her.

Although Ms. Medina subsequently confronted Defendant at her

home, he denied knowing anything about the ticket. At that

point, Ms. Medina left to go to an appointment. Upon her

return, Defendant and Ms. Lacroix had packed up their belongings

and left. After Defendant and Ms. Lacroix departed, Ms. Medina

discovered another pawnshop ticket in the shop in which

Defendant and Ms. Lacroix had been staying.
 -4-
 Ms. Medina did not immediately call the police because she

did not want Defendant to get in trouble. Instead, Ms. Medina

just wanted to recover the tools. After having failed to get

Defendant, who knew that he did not have permission to pawn the

tools, to return the items in question, Ms. Medina contacted the

New Hanover County Sheriff’s office and reported that Defendant

had stolen two lasers, three generators, an air compressor, and

a hammer drill from the trailers in her backyard.

 The investigation into the allegations that Ms. Medina had

made against Defendant was conducted by Detective Angie Tindall

of the New Hanover County Sheriff’s Department. Although

Detective Tindall left messages for Defendant with numerous

family members, she never reached him. As part of her

investigation, Detective Tindall checked into the validity of

Ms. Medina’s claims after being told by a family member that

Defendant had been asked to pawn the items for Ms. Medina

because Ms. Medina had stolen $500 from her employer. However,

Detective Tindall was unable to find any support for this

accusation. As a result of the fact that Ms. Medina was in a

position to provide the serial numbers for the items that had

been pawned, Detective Tindall was able to locate the missing

tools and obtain the return of most of the missing property to

Ms. Medina. In spite of her recognition that this matter was
 -5-
replete with family drama, Detective Tindall proceeded with the

investigation because Ms. Medina “seemed to be telling [her] the

truth.”

 2. Defendant’s Evidence

 Defendant traveled to South Carolina in order to turn

himself in on unrelated criminal charges on 1 October 2010. Ms.

Medina wired $200 to Defendant in order to enable him to post

bond. However, Ms. Medina told Defendant that she needed him to

repay the money that she had loaned him for the purpose of

making bond promptly because she had taken $500 from the safe at

Friendly Check Cashing, where she was employed, in order to

secure Defendant’s release and to pay for a party that she

planned to host. More specifically, Ms. Medina told Defendant

that she needed to replace all of the money that she had taken

from the safe before an audit that was going to be conducted on

the following Monday. As part of the repayment process, Ms.

Medina gave Defendant two broken generators and told him that he

could have them if he could get them running.

 On 2 October 2010, Defendant, with Ms. Medina’s permission,

pawned a drill that he had received from Ms. Medina, gave half

of the money that he received as a result of this transaction to

Ms. Medina, and used the other half to purchase gas which he

used to drive to Leland as part of an attempt to get the broken
 -6-
generators running. Ms. Medina’s fiancé, Juan, helped Defendant

load the generators into a truck since they were too heavy for

Defendant to lift on his own.

 At some point, Defendant was able to pawn the two

generators for $300 and handed the proceeds to Ms. Medina

outside Friendly Check Cashing. After the transfer had been

completed, Defendant and Ms. Medina entered Friendly Check

Cashing, where Ms. Medina put the cash in a rolled up newspaper,

slipped the newspaper to Defendant from behind the glass, and

told Defendant to give the cash to her manager, who was working

beside her. Upon receiving these instructions, Defendant took

$250 from the newspaper and gave it to the manager, who took the

cash and then swiped her ATM card for the apparent purpose of

replacing the remaining $250 that Ms. Medina had taken from the

store’s safe.

 On 6 November 2011, Defendant pawned two lasers that he

had received from Ms. Medina at National Pawn for $200 and took

the proceeds directly to Picasso Pawn for the purpose of making

a payment relating to certain items of jewelry that Ms. Medina

had pawned there. While at Picasso Pawn, Defendant pawned an

air compressor that Ms. Medina had thrown away for $35.

Defendant left the pawn ticket for the lasers in Ms. Medina’s
 -7-
truck, along with the receipt for the payment that he had made

to assist in the process of redeeming her jewelry.

 Defendant denied having stolen anything from Ms. Medina,

asserted that Ms. Medina was aware that he was pawning the

tools, and testified that “she was basically hand in hand with

everything I did.” Similarly, Ms. Lacroix testified that she

knew that Defendant was pawning certain items, that Defendant

and Ms. Medina had discussed the transactions in which Defendant

had engaged and the manner in which the resulting proceeds would

be used, and that she and Defendant had moved away from Ms.

Medina’s property because they were fighting about the pawn

tickets and Defendant’s relationship with Ms. Lacroix.

 According to Defendant, the members of his family

frequently called the police about each other’s activities.

Although Ms. Medina denied that she was referring to Defendant,

Defendant pointed out that Ms. Medina had written a Facebook

message calling upon people to “Bring That White Trash Down” by

helping her get “dirt” on Defendant, who was known by the

nickname of “White Trash.”

 B. Procedural History

 On 7 November 2010, a warrant for arrest was issued

charging Defendant with obtaining property by false pretenses.

On 18 November 2010, a warrant for arrest was issued charging
 -8-
Defendant with felonious larceny and two additional counts of

obtaining property by false pretenses. On 21 February 2011, the

New Hanover County grand jury returned bills of indictment

charging Defendant with felonious larceny, felonious breaking or

entering into a trailer, and five counts of obtaining property

by false pretenses. The charges against Defendant came on for

trial before the trial court and a jury at the 12 September 2011

criminal session of New Hanover County Superior Court. On 15

September 2011, the jury returned verdicts finding Defendant

guilty of misdemeanor larceny, felonious breaking or entering a

trailer, and five counts of obtaining property by false

pretenses. At the conclusion of the ensuing sentencing hearing,

the trial court entered judgments sentencing Defendant to a term

of 8 to 10 months imprisonment based upon his consolidated

convictions for misdemeanor larceny and felonious breaking or

entering a trailer and to two consecutive terms of 11 to 14

months imprisonment based upon his consolidated convictions for

obtaining property by false pretenses. On 15 October 2013,

Defendant filed a petition seeking the issuance of a writ of

certiorari by this Court. This Court granted Defendant’s

certiorari petition on 31 October 2013.

 II. Substantive Legal Analysis
 -9-
 In his initial challenge to the trial court’s judgments,

Defendant contends that the trial court committed plain error by

permitting Detective Tindall to testify that she moved forward

with her investigation into the allegations that Ms. Medina had

made against Defendant because she believed that Ms. Medina was

telling her the truth. More specifically, Defendant contends

that the challenged testimony constituted an impermissible

vouching for Ms. Medina’s credibility in a case in which the

only contested issue was the relative credibility of Ms. Medina

and Defendant. Defendant’s argument has merit.

 A. Standard of Review

 As he candidly concedes in his brief, Defendant did not

object to the admission of the challenged portion of Detective

Tindall’s testimony at trial. For that reason, our evaluation

of the validity of Defendant’s contention is limited to

determining whether the admission of the challenged portion of

Detective Tindall’s testimony constituted plain error. A plain

error is an error that is “so fundamental that it undermines the

fairness of the trial, or [has] a probable impact on the guilty

verdict.” State v. Floyd, 148 N.C. App. 290, 295, 558 S.E.2d

237, 240 (2002). In order to obtain relief on plain error

grounds, “[D]efendant must convince this Court not only that

there was error, but that absent the error, the jury probably
 -10-
would have reached a different result.” State v. Jordan, 333

N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

 B. Relevant Legal Principles

 “It is fundamental to a fair trial that the credibility of

the witnesses be determined by the jury.” State v. Hannon, 118

N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995) (citing State v.

Holloway, 82 N.C. App. 586, 587, 347 S.E.2d 72, 73-74 (1986)).

“The jury is the lie detector in the courtroom and is the only

proper entity to perform the ultimate function of every trial—

determination of the truth.” State v. Kim, 318 N.C. 614, 621,

350 S.E.2d 347, 351 (1986). For that reason, it is well

established that “a witness may not vouch for the credibility of

a victim,” State v. Giddens, 199 N.C. App. 115, 121, 681 S.E.2d

504, 508 (2009), aff’d, 363 N.C. 826, 689 S.E.2d 858-59 (2010),

with this rule being applicable regardless of whether the

improper vouching for the credibility of another witness occurs

during the testimony of an expert, State v. Dixon, 150 N.C. App.

46, 52, 563 S.E.2d 594, 598 (2002) (stating that “[e]xpert

opinion testimony is not admissible to establish the credibility

of the victim as a witness”), aff’d 356 N.C. 428, 571 S.E.2d 584

(2002), or a lay witness. State v. Freeland, 316 N.C. 13, 16-

17, 340 S.E.2d 35, 36-37 (1986) (holding that the trial court
 -11-
erred by allowing the alleged victim’s mother to testify that

her daughter tells the truth).

 C. Plain Error Analysis

 In the course of Detective Tindall’s testimony on direct

examination, the State and Detective Tindall engaged in the

following colloquy:

 [Prosecutor]: At any point did you ever
 question this case, this has a lot of family
 drama?

 [Det. Tindall]: Yes

 [Prosecutor]: What made you go forward?

 [Det. Tindall]: [Ms. Medina] seemed to be
 telling me the truth, she gave me all the
 information possible that she had and we are
 required to investigate everything to the
 fullest.

By testifying that Ms. Medina seemed to be telling her the

truth, Detective Tindall vouched for Ms. Medina’s credibility,1 a

result that is clearly forbidden by basic principles of North

Carolina evidence law. Giddens, 199 N.C. App. at 121, 681

S.E.2d at 508. As a result of the fact that testimony of the

type given by Detective Tindall is clearly inadmissible, the
 1
 Although our dissenting colleague argues that Detective
Tindall’s testimony did not vouch for the credibility of a
witness, the record reflects that Ms. Medina testified at trial
and that Detective Tindall’s explanation for her decision to
continue the investigation stemmed from her belief that Ms.
Medina was telling the truth. Under that set of circumstances,
we have no hesitation in concluding that Detective Tindall
vouched for Ms. Medina’s credibility.
 -12-
only remaining question for our consideration is whether the

jury would have probably reached a different outcome had it not

been allowed to hear the challenged portion of Detective

Tindall’s testimony.

 The importance of Ms. Medina’s testimony to the State’s

case against Defendant should be apparent from even a cursory

examination of the record. Simply put, the State’s case hinged

almost entirely on Ms. Medina’s credibility. As a result of the

fact that Defendant freely admitted that he had pawned the tools

that Ms. Medina accused him of converting to his own use, the

extent to which the jury convicted or acquitted Defendant

necessarily depended on whether the jury believed Defendant’s

claim to have been authorized to pawn the tools in question by

Ms. Medina or whether the jury believed the State’s assertion

that Defendant took the tools from the storage trailers and

pawned them without obtaining Ms. Medina’s permission.

 The only evidence presented at trial to the effect that

Defendant lacked permission to pawn the Medinas’ tools consisted

of Ms. Medina’s testimony to that effect, which Defendant

directly disputed when he took the witness stand. As a result

of the fact that law enforcement officers have the

responsibility of conducting a fair investigation before

initiating criminal charges against anyone, the jury “most
 -13-
likely gave [Detective Tindall’s] opinion more weight than a lay

opinion.” Giddens, 199 N.C. App. at 122, 681 S.E.2d at 508. As

a result, given the importance that the jury probably gave to

Detective Tindall’s assessment of the relative credibility of

the positions taken by Ms. Medina and Defendant and the fact

that the outcome in this case depended largely on Ms. Medina’s

credibility, we have no hesitation in holding that the admission

of the challenged portion of Detective Tindall’s testimony

constituted plain error. Hannon, 118 N.C. App. 448, 451, 455

S.E.2d 494, 496 (stating that “the admission of such an opinion

is plain error when the State’s case depends largely on the

prosecuting witness’s credibility”); see also Giddens, 199 N.C.

App. at 122, 681 S.E.2d at 508 (holding that the trial court

committed plain error by allowing the admission of non-expert

testimony that the Department of Social Services had

substantiated a claim of sexual abuse given that the only

evidence to that effect in the record was the children’s

testimony and their prior consistent statements).

 In attempting to persuade us to reach a different result,

the State relies upon our decision in State v. O’Hanlan, 153

N.C. App. 546, 570 S.E.2d 751 (2002), cert. denied, 358 N.C.

158, 593 S.E.2d 397-98 (2004), in which a law enforcement

officer testified that he had refrained from conducting a more
 -14-
thorough investigation of the available physical evidence in a

sexual assault case because the victim of the sexual assault was

able to positively identify her assailant. In upholding the

defendant’s conviction, we rejected the defendant’s argument

that the officer had impermissibly vouched for the witness’

credibility, holding that, instead of expressing an opinion that

the victim had, in fact, been assaulted, the officer had merely

explained why he did not request more thorough testing of the

physical evidence during the course of his investigation and

stated that the officer’s testimony was “helpful to the fact-

finder in presenting a clear understanding of his investigative

process.” O’Hanlan, 153 N.C. App. at 563, 570 S.E.2d at 762.

Although the State asserts that the challenged portion of

Detective Tindall’s testimony was admissible on the basis of the

same logic that we deemed persuasive in O’Hanlan, we do not

believe that O’Hanlan is controlling here given that, in

O’Hanlan, the defendant specifically challenged the officer’s

failure to conduct additional testing of the physical evidence

on cross-examination while Defendant never questioned Detective

Tindall’s decision to proceed to have charges taken out against

Defendant.2 In view of the fact that Defendant did not directly

 2
 Similarly, in an attempt to suggest that Detective
Tindall’s testimony was admissible, our dissenting colleague
relies upon our decision in State v. Westall, 116 N.C. App. 534,
 -15-
challenge Detective Tindall’s decision to proceed against him,

there was no need for the State to explain why she did so.3 As a

result, O’Hanlan provides no basis for a decision in the State’s

favor.4

 III. Conclusion

546-47, 449 S.E.2d 24, 31-32 (1994), in which we held that the
trial court did not err by admitting the testimony of an
investigating officer to the effect that he had not taken notes
during the interview of a particular witness because he believed
that the witness was lying given that the officer had been
questioned on cross-examination about his failure to take notes
during his interview of the witness. We do not believe that
Westall is relevant to this case given that Detective Tindall
made the statement that is discussed in the text on direct
examination and had never been subject to cross-examination
concerning the reason that she decided to pursue the
investigation.
 3
 Admittedly, Defendant questioned Ms. Medina on cross-
examination in such a manner as to challenge her credibility.
Although the State argues that Defendant’s decision to question
Ms. Medina in this manner authorized the admission of the
challenged portion of Detective Tindall’s testimony pursuant to
N.C. Gen. Stat. § 8C-1, Rule 608(a) (providing that “[t]he
credibility of a witness may be attacked by evidence . . . in
the form of reputation or opinion as provided in [N.C. Gen.
Stat. § 8C-1,] Rule 405(a),” subject to the limitation that “(1)
such evidence may refer only to character for truthfulness or
untruthfulness” and that “(2) evidence of truthful character is
admissible only after the character of the witness has been
attacked by opinion or reputation evidence or otherwise”), we do
not find this argument persuasive given that Detective Tindall’s
testimony was not focused on Ms. Medina’s “character for
truthfulness or untruthfulness” and given that Ms. Medina’s
character, as compared to her credibility, had not been
attacked.
 4
 As a result of our determination that Defendant is entitled
to a new trial for the reason discussed in the text, we need not
address Defendant’s remaining challenge to the trial court’s
judgments.
 -16-
 Thus, for the reasons set forth above, we conclude that the

trial court committed plain error by permitting Detective

Tindall to improperly vouch for Ms. Medina’s credibility. As a

result, Defendant is entitled to a new trial.

 NEW TRIAL.

 Judges ELMORE concurs.

 Judge BRYANT dissents in separate opinion.
 NO. COA14-490
 NORTH CAROLINA COURT OF APPEALS
 Filed: 16 December 2014

STATE OF NORTH CAROLINA

 New Hanover County
 v.
 Nos. 10 CRS 61706, 62183

BO ANDERSON TAYLOR

 BRYANT, Judge, dissenting.

 The majority remands for a new trial based on their

determination that the trial court committed plain error in

allowing Detective Tindall’s testimony that “[Ms. Medina] seemed

to be telling me the truth[.]” Because I do not believe the

admission of that testimony meets the threshold needed for plain

error, I respectfully dissent.

 As acknowledged in the majority opinion, “[i]t is

fundamental to a fair trial that the credibility of the

witnesses be determined by the jury.” Hannon, 118 N.C. App. at

451, 455 S.E.2d at 496 (citation omitted). And, I would hold

that in this case, the jury’s ability to make such a credibility

determination about Ms. Medina—a woman thirty-one years old and

mother of four—who testified before them, was unimpeded.
 -18-

 Detective Tindall testified that she investigated the

claims made by Ms. Medina, and the detective was aware of the

“family drama” surrounding defendant and Ms. Medina.

 A family member advised me that [defendant]
 was asked to pawn the items for [Ms.
 Medina], that [Ms. Medina] had stolen Five
 Hundred Dollars from her employer. I
 investigated that and learned that there was
 no evidence of this occurring so, therefore,
 [Ms. Medina] was never charged and I had no
 evidence.

When asked what made her move forward, Detective Tindall

testified, “[Ms. Medina] seemed to be telling me the truth, she

gave me all the information possible that she had and we are

required to investigate everything to the fullest.” Detective

Tindall expressed a lay opinion in response to a proper question

regarding why she moved forward with her investigation and

charges.5 Furthermore, Detective Tindall provided the basis for

her opinion: “she gave me all the information possible that she

had . . . .” See State v. Westall, 116 N.C. App. 534, 546—47,

449 S.E.2d 24, 31—32 (1994) (holding no error where the

detective expressed his lay opinion that the defendant was not

5
 N.C. Gen. Stat. § 8C-1, Rule 701 (2013) (“If the witness is
not testifying as an expert, [her] testimony in the form of
opinions or inferences is limited to those opinions or
inferences which are (a) rationally based on the perception of
the witness and (b) helpful to a clear understanding of his
testimony or the determination of a fact in issue.”).
 -19-

being truthful during an interview as a basis for the

detective’s failure to take any notes during the interview).

 For error to rise to the level that it requires a new

trial, when no objection was made at trial and the alleged error

is brought forth for the first time on appeal, such error must

be

 fundamental error, something so basic, so
 prejudicial, so lacking in its elements that
 justice cannot have been done, or where the
 error is grave error which amounts to a
 denial of a fundamental right of the
 accused, or the error has resulted in a
 miscarriage of justice or in the denial to
 appellant of a fair trial . . . .

Lawrence, 365 N.C. at 516—17, 723 S.E.2d at 333 (citation

omitted). We apply the plain error rule cautiously and only in

exceptional cases where the defendant can show extreme

prejudice. Such is not the case on this record. Defendant

challenges the detective’s response to a question regarding the

investigation. The response was not one in which the detective

was vouching for the credibility of a trial witness. Such a

response cannot be deemed a fundamental error resulting in the

denial of a fair trial to defendant. Therefore, because

defendant cannot meet his burden and show plain error, defendant

is not entitled to a new trial. Accordingly, I would overrule
 -20-

defendant’s argument, acknowledge the verdict of the jury, and

affirm the judgment of the trial court.