STATE OF NORTH CAROLINA v. CHRISTOPHER JAMES WOODARD

No. COA10-1172

(Filed 5 April 2011)

**1. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

Although defendant contended that the trial court violated his constitutional rights by requiring him to wear prison clothing during the jury selection and first day of trial, defendant failed to preserve this issue for appeal by not raising it at trial.

**2. Evidence— prior crimes or bad acts—broke into another pharmacy to obtain drugs**

The trial court did not abuse its discretion in a drugs case by allowing the State to admit evidence allegedly in violation of N.C.G.S. § 8C-1, Rules 404(b) and 403 including that defendant and his coparticipants broke into another pharmacy but were unable to obtain narcotics. The evidence was sufficiently similar and the jury was specifically instructed to consider the testimony for the limited purpose of motive, plan, opportunity, intent, preparation, knowledge, and/or identity with regard to the current offenses.

**3. Burglary and Unlawful Breaking or Entering—felonious breaking and entering—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of felonious breaking and entering. The State provided sufficient evidence that defendant broke into a drugstore with the intention of stealing narcotics.

**4. Larceny— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of larceny. The State provided sufficient evidence that defendant broke into a drugstore, took pills, and carried the pills away without consent with the intent to deprive the drugstore of the pills permanently.

**5. Drugs— trafficking opium by possession and transportation—motion to dismiss—sufficiency of evidence—identity—weight**

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking opium by possession and trans-

portation. Contrary to defendant's assertion, the State was not required to conduct a chemical analysis on the controlled substance in order to sustain a conviction under N.C.G.S. § 90-5(h)(4). A pharmacist's identification of the stolen drugs as more than 28 grams of opium derivative hydrocodone acetaminophen was sufficient evidence of identity and weight of the stolen drugs.

Appeal by defendant from judgments entered 28 April 2010 by Judge James U. Downs in Avery County Superior Court. Heard in the Court of Appeals 21 February 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Allison A. Angell, for the State.*

*Mary March Exum for defendant appellant.*

McCULLOUGH, Judge.

Christopher James Woodard ("defendant") appeals from judgments based on his convictions for trafficking more than 28 grams of opium by possession, trafficking opium by transportation, felony breaking and entering, felony larceny, and felony possession of stolen goods. For reasons discussed herein, we find no error.

## I. Background

In July of 2009, defendant was indicted for the following charges: (1) trafficking more than 28 grams of opium by possession under N.C. Gen. Stat. § 90-95(h)(4); (2) trafficking more than 28 grams of opium by transportation under N.C. Gen. Stat. § 90-95(h)(4); (3) felonious breaking and entering under N.C. Gen. Stat. § 14-54(a); (4) felonious larceny under N.C. Gen. Stat. § 14-72(b)(2); and (5) felonious possession of stolen goods under N.C. Gen. Stat. § 14-71.1.

At trial, Detective Frank Catalano ("Detective Catalano") of the Avery County Sheriff's Office testified that on 22 March 2009, he arrived at Crossnore Drugstore in Crossnore to investigate a break-in. A window at Crossnore Drugstore had been broken and he recovered bottles of pills that were lying in the parking lot. William Martin ("Mr. Martin"), a pharmacist at Crossnore Drugstore, arrived at the scene and gave Detective Catalano a list of missing inventory. Approximately 4,000 to 5,000 pills had been stolen, with a total monetary loss of over $31,000.00.

Upon investigation, Detective Catalano had arrest warrants issued for Christopher Hensley ("Mr. Hensley"), Patrick McDaniel ("Mr. McDaniel"), and defendant for charges relating to the break-in at Crossnore Drugstore. Mr. Hensley took Detective Catalano and Detective Danny Phillips ("Detective Phillips") to Burkemont Mountain, where he directed them to a large pile of prescription pill bottles buried three feet underground. Detective Catalano and Detective Phillips collected the pills and spent several hours counting them.

Mr. Martin testified that approximately 2,600 pills of hydrocodone, an opium derivative, were stolen from Crossnore Drugstore. He identified the pill bottles presented by the State as belonging to Crossnore Drugstore by looking at the account numbers on the bottles.

Mr. Hensley testified that on the night of the break-in, he drove defendant and Mr. McDaniel to Crossnore Drugstore at approximately 1:00 a.m. so that they could steal narcotics. Mr. Hensley remained in the car while defendant and Mr. McDaniel smashed in the front window and went inside. About one minute later, defendant and Mr. McDaniel returned to the car with two large black trash bags filled with pills. Mr. Hensley drove them to Mr. McDaniel's house where they split up the hydrocodone three ways and buried the remaining pills at Burkemont Mountain.

Mr. Hensley said that a few days before breaking into Crossnore Drugstore, he, defendant, and Mr. McDaniel broke into a pharmacy in Mitchell County around 1:00 a.m. with the intention of stealing narcotics, but were unable to do so. The trial court allowed his testimony over defendant's objection.

After the State presented its evidence, defendant moved for dismissal of all charges on grounds of insufficient evidence, which the trial court denied. The trial court also denied defendant's renewed motion to dismiss at the close of evidence. On 28 April 2010, the jury found defendant guilty of all charges. Defendant appeals.

## II. Analysis

### A. Defendant's Constitutional Rights

[1] Defendant argues that the trial court violated his rights under the United States and North Carolina Constitutions and N.C. Gen. Stat. § 15-176 by requiring him to wear prison clothing during the jury selection and first day of trial. Defendant also contends that the trial

court violated his due process rights by coaching the Assistant District Attorney during her direct examination of Mr. Martin. Because such issues were not properly preserved for appeal, we will not address them.

Defendant did not object to either of these alleged errors during trial. Generally, a purported error, even one of constitutional magnitude, that is not raised and ruled upon in the trial court is waived and will not be considered on appeal. *State v. Smith*, 352 N.C. 531, 557-58, 532 S.E.2d 773, 790 (2000), *cert. denied*, 532 U.S. 949, 149 L. Ed. 2d 360 (2001). Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure permits us to review an alleged error not properly preserved at trial if the defendant specifically and distinctly contends that it amounted to plain error. N.C. R. App. P. 10(c)(4) (2010). However, plain error review does not apply here as it is " 'limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence.' " *In re W.R.*, 363 N.C. 244, 247, 675 S.E.2d 342, 344 (2009) (quoting *State v. Golphin*, 352 N.C. 364, 460, 533 S.E.2d 168, 230-31 (2000)).

B. Mr. Hensley's Testimony

[2] Defendant alleges that the trial court improperly allowed the State to admit evidence in violation of Rules 404(b) and 403 of the North Carolina Rules of Evidence. Mr. Hensley testified that a few days before they broke into Crossnore Drugstore, he, defendant, and Mr. McDaniel broke into a pharmacy in Mitchell County around 1:00 a.m. but were unable to obtain any narcotics. The trial court permitted the testimony over defendant's objection and concluded that

> the circumstances surrounding the events occurring, allegedly occurring in Mitchell County sometime prior to the events . . . complained of [at Crossnore Pharmacy] were so similar in time and circumstances and other surrounding matters that the Court deems that the admissibility far outweighs any prejudice that they might have with regard to the defendant[.]

We review a trial court's decision to admit evidence under Rules 404(b) for an abuse of discretion. *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, *appeal dismissed and disc. review denied*, 360 N.C. 653, 637 S.E.2d 192 (2006). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

Defendant argues that Mr. Hensley's testimony was inadmissible character evidence that was unfairly prejudicial. Rule 404(b) of the North Carolina Rules of Evidence provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009).

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2009). "[T]he ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of [Rule 403]." *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988).

Evidence of other crimes is admissible "as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. Aldridge*, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635, *appeal dismissed and disc. review denied*, 353 N.C. 269, 546 S.E.2d 114 (2000). Such evidence can be admitted " 'if it tends to show the existence of a plan or design to commit the offense charged, or to accomplish a goal of which the offense charged is a part or toward which it is a step.' " *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 892 (1991) (citation omitted). There must be a concurrence of common features. *Id.*

In the present case, the evidence that defendant broke into a pharmacy in Mitchell County is sufficiently similar to the break-in at Crossnore Drugstore. The incidents were only a few days apart and both involved defendant, Mr. Hensley, and Mr. McDaniel. Both events took place around 1:00 a.m. for the purpose of stealing narcotics. Furthermore, the trial court specifically instructed the jury to only consider the testimony for the limited purpose of "motive, plan, opportunity, intent, preparation, knowledge and/or identity with regard to the offenses charged here." The trial court did not abuse its discretion in admitting the testimony.

STATE v. WOODARD

[210 N.C. App. 725 (2011)]

C. Motion to Dismiss

Defendant argues that the trial court erred by denying his motion to dismiss the charges against him for insufficient evidence. We find no error in the denying of the motion to dismiss the charges of felony breaking and entering, felony larceny, and trafficking opium by possession and trafficking opium by transportation. We will not address the denial of the motion to dismiss the felonious possession of stolen goods as the trial court arrested judgment on this charge and neither party now contends this to be error. *State v. Pakulski*, 326 N.C. 434, 439, 390 S.E.2d 129, 131 (1990) ("A court is free to arrest judgment in a proper case on its own motion . . . .").

We review the denial of a motion to dismiss for insufficient evidence *de novo*. *State v. Rouse*, 198 N.C. App. 378, 381, 679 S.E.2d 520, 523 (2009). When ruling on a motion to dismiss, a trial court must determine whether there is substantial evidence of each essential element of the offenses charged. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). "If, viewed in the light most favorable to the State, the evidence is such that a jury could reasonably infer that defendant is guilty, the motion must be denied." *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2002).

**[3]** The elements of felonious breaking and entering are (1) the breaking or entering (2) of any building (3) with the intent to commit a felony or larceny. N.C. Gen. Stat. § 14-54(a) (2009). The State provided evidence of each element through Mr. Hensley's testimony that defendant broke into Crossnore Drugstore with the intention of stealing narcotics.

**[4]** To be convicted of larceny, "there must be substantial evidence showing that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Sluka*, 107 N.C. App. 200, 204, 419 S.E.2d 200, 203 (1992). The crime of larceny is a felony if it is committed pursuant to a breaking or entering. N.C. Gen. Stat. § 14-72(b)(2) (2009). Sufficient evidence was presented at trial through Mr. Hensley's testimony to permit a jury to find that defendant took pills from the Crossnore Drugstore; carried the pills away; without consent; with the intent to deprive Crossnore Drugstore of the pills permanently; and that the pills were taken pursuant to a breaking or entering.

**[5]** Defendant also contends that the trial court erred by failing to dismiss the charges for trafficking opium, because the State did not

provide a chemical analysis of the pills introduced into evidence. We disagree.

To be convicted of trafficking more than 28 grams of opium, the State is required to prove that defendant: (1) possessed or transported an opium derivative; and (2) the opium derivative weighed twenty-eight grams or more. N.C. Gen. Stat. § 90-95(h)(4)(c) (2009). The State bears the burden of establishing the identity of any controlled substance that is the basis of the prosecution. *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010).

In *State v. Llamas-Hernandez,* our Supreme Court concluded that the visual identification by two police officers that a particular substance was cocaine was not reliable and that the identification of a controlled substance must be shown by chemical analysis. *State v. Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658 (2009) (reversing for reasons stated in the dissenting opinion of our Court, 189 N.C. App. 640, 652-54, 659 S.E.2d 79, 86-88 (2008)). Similarly, in *Ward,* the defendant's convictions were based upon the visual examination of pills by a forensic chemist, the State's expert witness. *Ward*, 364 N.C. at 136-37, 694 S.E.2d at 740. Our Supreme Court held that an expert witness's visual identification of an alleged controlled substance "is not sufficiently reliable for criminal prosecutions[.]" *Id.* at 147, 694 S.E.2d at 747. "Unless the State establishes before the trial court that *another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt,* some form of scientifically valid chemical analysis is required." *Id.* (emphasis added).

Hydrocodone, an opium derivative, is a controlled substance that is defined in terms of its chemical composition. N.C. Gen. Stat. § 90-91(d)(7) (2009).

The State is not required, as defendant suggests, to conduct a chemical analysis on a controlled substance in order to sustain a conviction under N.C. Gen. Stat. § 90-95(h)(4), provided that the State has established "the identity of the controlled substance beyond a reasonable doubt" by "another method of identification." *See Ward*, 364 N.C. at 147, 694 S.E.2d at 747. In our opinion, in the present case, the State's evidence sufficiently established the identity of the stolen drugs by another method.

Here, William Martin, the pharmacist manager at Crossnore Drugstore—which was the pharmacy from which the drugs were

stolen—testified on behalf of the State. Mr. Martin, who has been a pharmacist for thirty-five years, testified that 2,691 tablets of hydrocodone acetaminophen, an opium derivative, were stolen from the pharmacy on 22 March 2009. Mr. Martin testified that he kept "a perpetual inventory of all of [the pharmacy's] drug items," inventoried "by strength and item number[,] and as new items come in, [those items are] added to that inventory automatically through a computer system and as things are dispensed they're taken away from the inventory by quantity." Through this process, Mr. Martin testified that he could account for the type and quantity of every item in his pharmacy inventory throughout the day, every day. Accordingly, Mr. Martin was able to identify which pill bottles were stolen from the pharmacy on 22 March by examining his inventory against the remaining bottles, because each bottle had "a sticker on it from [the pharmacy's] distributor that identifies the item, the date it was purchased and a partial of [the pharmacy's] account number on that sticker." These stickers, which were on every pill bottle delivered to the pharmacy, aided Mr. Martin in determining that 2,691 tablets of hydrocodone acetaminophen were stolen. Mr. Martin further testified, based on his experience and knowledge as a pharmacist, that the weight of the stolen 2,691 pill tablets was approximately 1,472 grams. Based on Mr. Martin's thirty-five years of experience dispensing the same drugs that were stolen from the Crossnore Drugstore, and based on Mr. Martin's unchallenged and uncontroverted testimony regarding his detailed pharmacy inventory tracking process, we are persuaded that Mr. Martin's identification of the stolen drugs as more than 28 grams of opium derivative hydrocodone acetaminophen was sufficient evidence to establish the identity and weight of the stolen drugs and was not analogous to the visual identifications found to be insufficient in *Ward* and *Llamas–Hernandez.* Because the State offered evidence that was "sufficient to establish the identity of the controlled substance beyond a reasonable doubt," the State was not required to additionally perform "some form of scientifically valid chemical analysis" in order to establish that defendant "transport[ed] or possesse[d] . . . opium or opiate" in violation of N.C. Gen. Stat. § 90-95(h)(4). *See Ward,* 364 N.C. at 147, 694 S.E.2d at 747. Accordingly, we conclude that the trial court did not err by denying defendant's motions to dismiss the charges of trafficking opium by possession and by transportation because the evidence presented, taken in the light most favorable to the State, was sufficient to sustain defendant's convictions under N.C. Gen. Stat. § 90-95(h)(4).

As we have found that the trial court did not err in denying defendant's motion to dismiss the felonious breaking and entering charge, the felony larceny charge, and the trafficking opium by possession and trafficking opium by transportation charges, we conclude that defendant received a fair trial free of any prejudicial error.

No error.

Chief Judge MARTIN and Judge McGEE concur.