STATE OF NORTH CAROLINA v. ANTOINE M. MILES

No. COA11-1203

(File 5 June 2012)

**1. Appeal and Error—preservation of issues—argument dismissed**

Defendant failed to preserve for appellate review his argument that the trial court erred in an assault with a deadly weapon inflicting serious injury and felony possession of a weapon by a prisoner case by requiring defendant to wear prison garb during his trial. Defendant's argument was dismissed.

**2. Criminal Law—defendant restrained during trial—statutory requirements met—no abuse of discretion**

The trial court did not abuse its discretion in an assault with a deadly weapon inflicting serious injury and felony possession of

a weapon by a prisoner case by requiring defendant to be restrained during trial. The trial judge met the three requirements set out in N.C.G.S. § 15A-1031 before requiring defendant to be restrained.

**3. Sentencing—prior record level—one point added—offense committed while serving prison sentence—no Blakely error**

   The trial court did not err by adding one point to defendant's prior record level worksheet pursuant to N.C.G.S. § 15A-1340.14(b)(7). Defendant himself testified that he was serving a prison sentence for second-degree murder and several other crimes at the time the assault occurred, which allowed the trial court to add one point to his prior record level without submitting this fact to the jury. Accordingly, no *Blakely* error occurred.

Appeal by defendant from judgments entered 2 June 2011 and amended 3 June 2011 by Judge Paul L. Jones in Greene County Superior Court. Heard in the Court of Appeals 22 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Sue Genrich Berry for defendant.*

ELMORE, Judge.

Antoine M. Miles (defendant) was convicted by a jury of assault with a deadly weapon inflicting serious injury and felony possession of a weapon by a prisoner. Defendant argues that he did not receive a fair trial because he was required to wear prison garb and shackles during his trial. He also argues that the trial court erred during sentencing by adding one point to his prior record level. After careful consideration, we conclude that defendant received a trial free from error.

## I. Background

On 30 May 2009, defendant was an inmate at the Maury Correctional Institution. The evidence tended to show that defendant attacked Benny Stone, a correctional officer, using a razor blade. Defendant cut Stone's face, head, neck, and ears; Stone required hundreds of stitches to close the lacerations. He also required two surgical procedures to address nerve damage caused by the assault. Because of the assault, Stone is no longer physically able to work as a correctional officer and his speech is impaired.

**STATE v. MILES**

[221 N.C. App. 211 (2012)]

During the trial, defendant wore prison garb, two wrist irons, two leg irons, a "black box," and a waist chain. Before jury selection and outside the presence of potential jurors, the trial court inquired about defendant's attire:

> The Court: Does he have a jacket or something other than a t-shirt?
>
> [Defense Counsel]: No.
>
> [Prosecutor]: Your Honor, I did buy clothes for him and put them over there at the jail and I was just told by one of the deputies that DOC cannot take him out of his full restraints to let him get dressed in anything other than that because his custody level requires him to be in full restraints.
>
> The Court: Okay. Take a recess until one o'clock.

When the judge and attorneys returned from the recess, defendant moved to have his restraints removed so that the jury would not see them:

> The Court: Mr. Miles is now in the courtroom. The record should reflect that he is secured by double cuffs and also has shackles on his feet.
>
> Mr. Spence, I think you wanted to make a motion?
>
> [Defense Counsel]: Yes, sir, Your Honor. It seems like the double cuffs has a chain around his waist, too.
>
> The Court: It does.
>
> [Defense Counsel]: The motion is that he not be — that the jury not be allowed to see him in these shackles, that the shackles be taken off of him while he's in the presence of the jury—handcuffs and the leg chains. There are actually chains on his legs or around his ankles.
>
> The Court: Okay. The Court has been advised that he is restrained pursuant to his level of custody in the Department of Corrections.
>
> Does the State want to make a showing regarding the matter of restraint?
>
> [Prosecutor]: Yes, Your Honor.

The trial court then heard from the head of the Maury Correctional Institution, Dennis M. Daniels, and the officer who transported defendant to the courthouse, Sergeant Brown. Daniels testified that defendant was under "high security control," which is "for those inmates that have demonstrated assaulting behavior inside of a prison" and is the highest level of security control that the Department of Corrections can provide. After the assault on Stone, defendant had to be moved to another facility because Maury did not house high security control inmates; at the time he assaulted Stone, defendant was at the highest level of security control available at Maury. The requirements of high security control include double handcuffs and leg shackles for the security of staff, other inmates, and the general public. At the trial court's inquiry, Daniels testified that he believed it would be in the "best interest of the jury, the Court, and everybody else that he remain in this level of custody[.]"

Sergeant Brown testified that defendant's restraints could only be removed if the court authorized their removal. He explained that the restraints could be removed temporarily, to allow defendant to change into civilian clothes, but that defendant would then have to wear the restraints over his clothes. Sergeant Brown also testified that he believed that defendant's restraints were "necessary for control in the courtroom."

After hearing from the two witnesses, the trial court denied defendant's motion:

Okay. Regarding State versus Antoine Miles, the Court finds as a fact that[,] based upon the evidence produced[,] he requires the highest level of security; therefore, the Court will Order that he be restrained pursuant to North Carolina Department of Correction policy with two wrist cuffs, waistband chain, and physical restraints around his legs. That is for the safety of court personnel, jury and staff present. The Court will note that Mr. Miles is presently serving a sentence in the Department of Corrections for second-degree murder. His release date is . . . 2030.

After the jury returned to the courtroom, the trial court explained to the jury why defendant was wearing prison garb:

Let me explain something to you. Now, the defendant is in the custody of the Department of Corrections, he is a prisoner. That's the reason he is here today dressed as he is. You're not to assume anything by the fact that he's in prison. He's not to be punished

for anything he's done in the past. This offense that's alleged and his status at the time was that he's been in prison.

From their vantage point, the jurors could not see defendant's manacles, shackles, black box, or waist chain. Later, while the State was presenting a diagram of the part of the prison in which the attack took place, defendant asked to be moved so that he could also view the diagram, which was apparently not visible from the defense table. As a result, defendant's restraints became visible to the jury. The trial court again cautioned the jury:

> Ladies and Gentlemen of the jury, the Court wants to advise you the defendant has restraints to include shackles. You're not to hold that against him, the fact that he is in custody and is in restraints. He's in the Department of Corrections; you're not to hold that against him. Thank you.

The next morning, the trial court made the following explanation for the record:

> The Court wants to put on the record the fact that Mr. Miles, with the consent of his—after discussion with his lawyer, wanted to move his seat to a view where he could view the publication of the video of the cell block, which exposed the shackles of the defendant to the jury, which were otherwise unseen by the jury; and that this was done as an accommodation to the defendant and was not purposeful to allow the jury to view the shackles of the defendant.

At the conclusion of the trial, the jury found defendant guilty of assault with a deadly weapon inflicting serious injury and felony possession of a weapon by a prisoner. The trial court determined that defendant had 15 prior record points, and it sentenced him to a term of 44 to 62 months for the assault conviction and a term of 28 to 34 months for the weapons conviction, to be served consecutively.

## II Arguments

### A. Prison Garb During Trial

[1] Defendant first argues that the trial court erred by requiring defendant to wear prison garb during his trial. In his brief, defendant acknowledges that counsel made no objection to this decision at trial and recites the plain error standard of review. *See* N.C.R. App. P. 10(a)(4) (2012). However, "plain error review in North Carolina is normally limited to instructional and evidentiary error." *State v.*

*Lawrence,*___N.C. ___, ___, 723 S.E.2d 326, ___ (2012) (citation omitted). Several months ago, this Court addressed the same issue raised here—whether it was plain error for the trial court to require the defendant to wear prison garb in front of the jury—and held that the issue was not appropriate for plain error review because the alleged error was not instructional or evidentiary. *State v. Woodard,* ___ N.C. App. ___, ___, 709 S.E.2d 430, 433 (2011). We follow *Woodard* and decline to address defendant's first argument because it was not properly preserved for appeal.

## B. Prison Restraints Visible to Jury

[2] Defendant next argues that the trial court erred when it "required the Defendant to display multiple restraints to the jury in order to be able to see the evidence being presented to the jury." Defendant alleges that, by allowing defendant to move to a different seat in order to view the State's exhibits, the trial court forced upon defendant an improper Hobson's choice between seeing "a key piece of evidence against him" and "maintaining some semblance of the presumption of innocence" by keeping his restraints from the jury's sight. We disagree.

We review whether the trial court erred by requiring defendant to be restrained during trial for an abuse of discretion. *State v. Holmes,* 355 N.C. 719, 727, 565 S.E.2d 154, 161 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Woodard,* ___ N.C. App. at ___, 709 S.E.2d at 433 (citation and quotation omitted). As our Supreme Court has explained,

> shackling of the defendant should be avoided because (1) it may interfere with the defendant's thought processes and ease of communication with counsel, (2) it intrinsically gives affront to the dignity of the trial process, and most importantly, (3) it tends to create prejudice in the minds of the jurors by suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion.

*Holmes,* 355 N.C. at 727-28, 565 S.E.2d at 162 (citing *State v. Tolley,* 290 N.C. 349, 366, 226 S.E.2d 353, 367 (1976)). However, "[a] trial judge may order a defendant or witness subjected to physical restraint in the courtroom when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's

escape, or provide for the safety of persons." N.C. Gen. Stat. § 15A-1031 (2011). Before ordering the defendant restrained, the trial judge must:

(1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action; and

(2) Give the restrained person an opportunity to object; and

(3) Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.

*Id.* The trial court may consider the following "material circumstances" when conducting this analysis:

the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

*Holmes*, 355 N.C. at 728, 565 S.E.2d at 162 (2002) (quoting *Tolley*, 290 N.C. at 368, 226 S.E.2d at 368).

Here, the trial judge met the three requirements set out in N.C. Gen. Stat. § 15A-1031: (1) He entered his reasons for ordering defendant restrained into the record, outside the presence of the jury, and in the presence of defendant. (2) He gave defendant an opportunity to object (which defendant did). (3) He instructed the jurors not to consider defendant's restraints when weighing the evidence or determining guilt. The trial court explained his ruling, concluding that restraining defendant was necessary for the safety of the jury, the court personnel, and the staff. It based this decision on several of the *Tolley* factors, including the seriousness of defendant's charge (attacking a prison guard) and defendant's past record (second-degree murder). The trial court also based its decision on the testimony of a prison administrator and prison guard, both of whom opined that it would be in everybody's best interest for defendant to remain restrained during the trial. The trial court's decision was clearly a reasoned one. Accordingly, we cannot conclude that the trial court abused its dis-

cretion by ordering defendant to wear restraints in front of the jury and allowing the jury to view those restraints.

## C. Prior Record Level

[3]  Defendant argues that the trial court erred by adding one point to defendant's prior record level worksheet, pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), which permits the court to assign one point to a defendant's prior record level "[i]f the offense was committed . . . while the offender was serving a sentence of imprisonment[.]" N.C. Gen. Stat. § 15A-1340.14(b)(7) (2011). Defendant argues that the trial court committed a *Blakely* error by failing to submit to the jury the question of whether defendant was incarcerated at the time of the offense. *See Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403 (2004). We disagree.

This Court has previously summarized the applicable law as follows:

> In *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455. *In Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403, *reh'g denied,* 542 U.S. 961, 125 S. Ct. 21, 159 L. Ed. 2d 851 (2004), the Supreme Court further held:
>
> > [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . .* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose without any additional findings.
>
> *Id.* at 303-04, 159 L. Ed. 2d at 413-14 (internal citations omitted).

*State v. Wissink,* 187 N.C. App. 185, 187, 652 S.E.2d 17, 19 (2007).

Here, defendant himself testified that he was serving a prison sentence for second-degree murder and several other crimes at the time the assault occurred. Because defendant admitted this fact, which allowed the trial court to add one point to his prior record level under § 15A-1340.14(b)(7), the trial court did not increase defendant's penalty beyond the statutory maximum. Thus, the trial court was not

required to submit this fact to the jury. Accordingly, no *Blakely* error occurred and the trial court properly assigned one more point to defendant's prior record level.

### III. Conclusion

Defendant received a trial free from error.

No error.

Judges STEELMAN and STROUD concur.