BRYANT, Judge.
Where the State's evidence was sufficient to show defendant was a perpetrator of the offenses, the trial court did not err in denying defendant's motion to dismiss. Where defendant elicited evidence of plea discussions on cross-examination and invited the error of which he now complains, the trial court was not required to intervene ex mero motu and defendant has waived his right to appellate review of this issue. Where the testimony of a law enforcement officer did not impermissibly vouch for the credibility of another witness, the trial court did not err in admitting the testimony.
Defendant Travis Kingsberry was indicted on charges of first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree burglary stemming from events that occurred on 9 January 2009. On 8 May 2017, this case was tried before the Honorable Michael J. O'Foghludha, Judge presiding.
In the early morning of 9 January 2009, two men burst into the home of known drug-dealer Montrell Austin ("Montrell"). The two men were later identified as defendant and Jemel Bullock ("Jemel"). At the time of the break-in, the house was occupied by Montrell, Robert Earl Smith ("Robert"), and Gary Bullock ("Gary"). Montrell had received a phone call from Alan "J-Al" Gibson who said he wanted to purchase weed and shortly thereafter J-Al arrived at the house. Montrell told Robert to go outside to get the scales so he could weigh the weed. When Robert stepped out the back door, he saw two men come up the stairs wearing masks. Robert was shot and rendered unconscious. When Gary heard shots fired, he hid under a couch in the next room. A few minutes later, he came out and saw Montrell lying on the kitchen floor. Robert sustained serious injuries. Montrell died as a result of multiple gunshot wounds.
On 16 May 2017, defendant was convicted by a jury of first-degree murder on the basis of the felony murder rule, assault with a deadly weapon inflicting serious injury, and first-degree burglary. The trial court sentenced defendant to life imprisonment without the possibility of parole. Defendant appeals.
On appeal, defendant argues the trial court erred by: (I) denying his motion to dismiss based on insufficient evidence that he was the perpetrator; (II) failing to intervene or strike portions of witness testimony referencing his plea discussions with the State; and (III) allowing a lay witness to testify as to the credibility of another witness.
I
Defendant first argues the State did not present sufficient evidence that he was a perpetrator of the offenses, and therefore, it was erroneous for the trial court to deny his motion to dismiss for insufficiency of evidence. We disagree.
The standard of review for this Court to review a trial court's denial of a motion to dismiss for insufficient evidence is de novo . State v. Woodard , 210 N.C. App. 725, 730, 709 S.E.2d 430, 434 (2011). "Under a de novo review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams , 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008).
"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Earnhardt , 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (internal quotation marks omitted). "[T]he trial court should only be concerned that the evidence is sufficient to get the case to the jury," as opposed to examining the weight of the evidence. Id. at 67, 296 S.E.2d at 652. "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).
In the instant case, defendant was prosecuted for felony murder under the theory of "acting in concert." "To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose." State v. Joyner , 297 N.C. 349, 356, 255 S.E.2d 390, 395 (1979). "Under the theory of acting in concert, if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose." State v. Hill , 182 N.C. App. 88, 92-93, 641 S.E.2d 380, 385 (2007).
The State presented testimony from witnesses establishing that defendant was a knowing participant in the plan which ultimately led to Montrell's murder. At trial, testimony revealed J-Al, Jemel, Darius Benson ("Darius"), and Augustus Hawkins ("Augustus") devised a plan to stage a drug purchase and rob Montrell. Defendant showed up at the appropriate time and place to meet the others and participate in the robbery. Defendant carried a firearm and was given a mask to wear during the course of the robbery. Additionally, defendant was identified by Darius as one of the two intruders who went inside Montrell's house. As Montrell's murder was committed during the course of the robbery, defendant was, therefore, acting in concert and involved in all the charged crimes.
Although defendant argues there were contradictions and discrepancies in the State's evidence, including conflicting witness testimony identifying another co-defendant as the shooter, there was nevertheless direct witness testimony identifying defendant as the shooter. Defendant's argument raises issues of credibility that are for the jury to decide and not to be considered on review of a motion to dismiss. See State v. Keller , 297 N.C. 674, 679, 256 S.E.2d 710, 714 (1979) ("The credibility of witnesses is a matter for the jury rather than the court. Contradictions and discrepancies in the [S]tate's evidence do not warrant dismissal of the case."). Therefore, where as here, the State presented substantial evidence that defendant acted as a perpetrator in concert with others to commit the charged offenses, the trial court properly denied defendant's motion to dismiss.
II
Next, defendant, while acknowledging that he did not object to alleged errors at trial, nevertheless asserts that he should receive a new trial because the trial court failed to intervene ex mero motu or strike portions of witness testimony arguably referencing his pretrial plea discussions with the State. Defendant contends the trial court admitted evidence that was, by statute, incompetent. We disagree.
Generally, where a criminal defendant fails to object to the admission of certain evidence, this Court reviews the unpreserved issue for plain error. N.C. R. App. P. 10(a)(4) (2017); see State v. Lawrence , 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012) ("Unpreserved error in criminal cases, on the other hand, is reviewed only for plain error."). "When the evidence rendered incompetent by statute [is] admitted, it [becomes] the duty of the trial judge to exclude the testimony, and his failure to do so must be held reversible error whether exception was noted or not." State v. Porter , 272 N.C. 463, 468, 158 S.E.2d 626, 630 (1968). "Defendant [however,] must [ ] demonstrate that the trial court erred in introducing evidence precluded by statute before we may consider his assignments of error on appeal." State v. Thompson , 141 N.C. App. 698, 702, 543 S.E.2d 160, 163 (2001).
Defendant argues, based on N.C. Gen. Stat. § 15A-1025, that the trial court allowed impermissible comments regarding his plea discussions into evidence.[1] General Statues, section 15A-1025 states:
The fact that the defendant or his counsel and the prosecutor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.
N.C. Gen. Stat. § 15A-1025 (2017). Our courts recognize the need to protect "both defendants and prosecuting officials from being penalized for engaging in practices which are consistent with the objectives of the criminal justice system." State v. Wooten , 86 N.C. App. 481, 482, 358 S.E.2d 78 (1987). In determining whether the trial court improperly allowed the evidence, we first review whether the comments amounted to plea discussions and then determine whether the introduction of the evidence resulted in prejudice to defendant entitling him to a new trial. See State v. Flowers , 347 N.C. 1, 25-26, 489 S.E.2d 391, 405 (1997).
Here, there was no evidence of actual plea discussions between defendant and the prosecution. On cross-examination, defense counsel questioned Darius, a co-defendant testifying as a State's witness, about his guilty plea to Montrell's murder:
[DEFENSE COUNSEL]: You're the only co[-]defendant that has pled guilty to this murder; aren't you?
[STATE]: Objection.
[DARIUS]: Well-
[STATE]: Question assumed incorrect.
[THE COURT]: Overruled. He can answer it if he knows.
[DARIUS]: Was your co- -was your client ever given an opportunity to plead guilty? We all have the same opportunity. He didn't want to take his, am I correct?
During cross-examination, Darius speculated several times that defendant may have engaged in plea discussions with the State, most of which went unchallenged by defendant. Defendant made specific objections to Darius being unresponsive throughout questioning; however, defendant made only one objection to Darius repeatedly referencing defendant's potential plea discussions, and that was at the end of cross-examination, whereupon the trial court allowed the record to be stricken.
Under these circumstances, the trial court had no duty to act ex mero motu. See State v. Richardson , 342 N.C. 772, 786, 467 S.E.2d 685, 693 (1996) ("[O]nly an extreme impropriety ... will compel [the] Court to hold that the trial judge abused his discretion in not recognizing and correcting ex mero motu an argument that defense counsel apparently did not believe was prejudicial when originally spoken." (emphasis added)). Here, defendant, by his own line of questioning, elicited testimony regarding the State's plea discussions; therefore, he invited the error he now seeks relief from on appeal. See State v. Gobal , 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007) ("Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law."); see also N.C. Gen. Stat. § 15A-1443(c) (2017) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."). Accordingly, defendant has failed to show that the trial court was required to intervene ex mero motu , and further assuming there was error, it was invited error.
Alternatively, defendant has requested our review of his argument for plain error. See N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."). However, because defendant cannot establish a probability that the jury would have reached a different result, he cannot establish plain error. See Lawrence , 365 N.C. at 518, 723 S.E.2d at 334 (Plain error arises when "after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."). Given that the State presented substantial evidence that defendant was a knowing participant in the robbery that resulted in the shooting death of one man and serious injury of another, the challenged testimony that defendant may have engaged in plea discussions would not have led the jury to reach a different result. As defendant has failed to meet his burden, we reject defendant's alternative argument and conclude there was no plain error.
III
Finally, defendant argues that the testimony from a law enforcement officer, testifying as a lay witness, impermissibly bolstered the credibility of the State's witness, Darius, and constituted plain error. After careful review, we find no error.
Plain error arises when there is "a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill , 676 F.2d 995, 1002 (4th Cir. 1982) ). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).
Rule 701 of the North Carolina Rules of Evidence governs the admissibility of opinion testimony by a lay witness. Under the statute, it states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
N.C. Gen. Stat. § 8C-1, Rule 701 (2017). Under Rule 701, lay opinions "are admissible if they are based on first-hand knowledge and if they are helpful to the jury." Statev. Davis , 321 N.C. 52, 56, 361 S.E.2d 724, 726 (1987). "[W]hen [law enforcement] officers testify as lay witnesses, they are not permitted to invade the province of the jury by commenting on the credibility of the defendant." State v. Houser , 239 N.C. App. 410, 415, 768 S.E.2d 626, 631 (2015). However, such statements are admissible where law enforcement officers testify about details "rationally based on [their] perception and experience" to assist "the fact-finder in presenting a clear understanding of [the] investigative process." State v. O'Hanlan , 153 N.C. App. 546, 562-63, 570 S.E.2d 751, 761-62 (2002).
At trial, Special Agent Lee Baldwin ("Agent Baldwin") with the Bureau of Alcohol, Tobacco, and Firearms offered the following testimony when asked specifically about his investigation:
[DEFENSE COUNSEL]: So, in that first two weeks before January 9th, there was, apparently, according to your notes, a discussion that [Darius] heard, and then it even went further-they tried to call [Montrell], and it didn't work out because he didn't have any drugs at that time?
[AGENT BALDWIN]: Well, I disagree with your use of the word "they." You're say [sic] that they, indicating that all of them got together and made this phone call, and I don't believe that. From what my notes and from what I read, and from being at the interview and from listening to the testimony, I think [Darius] is telling me that [Augustus] and [J-Al] are having this discussion-
[DEFENSE COUNSEL]: I see.
[AGENT BALDWIN]: -and [Augustus] and [J-Al] may have made the phone call. And I believe that if he had answered the phone and said, yeah, I've got some drugs, they may have all turned around and maybe planned and done the robbery right then. That's possible. I honestly believe that could've possibly happened.
[DEFENSE COUNSEL]: And, of course, this was [Darius] telling you, making it look like the other guys were doing these things?
[AGENT BALDWIN]: No, I disagree with that. I think [Darius] was very forthcoming and put himself in this position, and-and talked about his culpability in this. And I think [Darius] has clearly admitted that he is as guilty of the murder as every other person that was there. I don't think he's trying to say, "it was all them, it wasn't me." I did not get that impression from him at all.
[DEFENSE COUNSEL]: Okay. And then, according to your notes, there was another-I don't want to use the word meeting, but there was another session on New Year's Eve that you've talked about, and I'm not-
[AGENT BALDWIN]: Yeah. And, again, I think the term is that these guys all hung out together and they would rent hotel rooms and they would party in hotel rooms. And I think he's giving me what he is [sic] going on at these hotel rooms and telling me of times when they had talked about-I mean, that's-that's what [Augustus] did. [Augustus] robbed people. That was his-that was his job. And I would imagine that on numerous occasions over the course of [Augustus'] life they got together and [Augustus] talked about robbing people. And he-[Darius]'s there and he's talking and telling me what the discussion is that's going on.
In his testimony, Agent Baldwin explained the investigative process he employed and the information he obtained surrounding the robbery that led to Montrell's murder. He illustrated how Darius's interview aided in his investigation and capture of the participants involved. Agent Baldwin's statements were rationally based on his perception and experience which were helpful to the jury. Therefore, we reject defendant's assertion that Agent Baldwin provided impermissible opinion testimony by vouching for the credibility of a witness, and conclude that the challenged testimony was not erroneously admitted. Accordingly, the trial court did not err, much less commit plain error, by admitting his testimony.
NO ERROR.
Report per Rule 30(e).
Judges DILLON and ZACHARY concur.

N.C. Gen. Stat. § 8C-1, Rule 410 (2017), also addresses the inadmissibility of plea discussions but this Court has previously recognized that "North Carolina practice in this area is governed in part by G.S. [§] 15A-1025 [.]" State v. Thompson , 141 N.C. App. 698, 703, 543 S.E.2d 160, 164 (2001).